IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GFI COMMERCIAL MORTGAGE LLP,<br><br>    Debtor.<br>_____/<br>CLASS B LIMITED PARTNER COMMITTEE,<br><br>    Appellant,<br><br>  v.<br><br>JOHN F. SAMPSON, Liquidator,<br><br>    Appellee.<br>_____/ | No. C 12-05241 SI<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS** |

Now before the Court is an appeal by the Class B Limited Partner Committee from four orders entered by the Hon. Thomas E. Carlson of the Bankruptcy Court for the Northern District of California. The orders appealed are: (1) Order Denying Committee of Class B Limited Partner's Motion to Surcharge Liquidator for Investment Loss; (2) Order Approving Application for Approval of Compensation and Expense Reimbursement by Chapter 11 Liquidator; (3) Order Approving Application for Compensation and Reimbursement of Expenses for Wendel, Rosen, Black & Dean, LLP as Counsel for Liquidator; and (4) Order Denying Motion for Reconsideration. This Court has jurisdiction under 28 U.S.C. § 158(a). Upon careful consideration of the parties' papers, the Court AFFIRMS the bankruptcy court's orders for the reasons discussed below.

## BACKGROUND

GFI Commercial Mortgage, L.P. ("GFI") was a partnership that owned commercial mortgages

and issued bonds based on those mortgages. Appellant's Excerpts of Record on Appeal ("R.") at 128:21-27. GFI filed for chapter 11 bankruptcy on September 30, 1996. Two years later, the bankruptcy court issued an order confirming the debtor's second amended plan of reorganization ("Plan").

The Plan contains several provisions relevant to the parties' dispute. First, it provided that John F. Sampson was to serve as the Liquidator. R. at 42:23-26. According to the Plan, the Liquidator was to "be a fiduciary to the Reorganized Debtor and the holder of Allowed Claims and Allowed Interests." R. at 98:20-21. Further, it was "the duty of the Liquidator on behalf of the Reorganized Debtor to liquidate all of the assets of the Reorganized Debtor, and to resolve all claims against the Reorganized Debtor, in a manner that is reasonably intended in good faith to maximize recoveries by the holders of Allowed Claims and Allowed Interests, subject to all applicable terms and conditions of this Plan and the Restructured Loan Documents, and subject to the approval of the Class B Limited Partner Committee as provided elsewhere in this Plan." R. at 98:22-99:2. The Plan also contains a provision providing that the Liquidator may operate "free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by th[e] Plan..." R. at 87: 9-11.

The Class B Limited Partners were the beneficiaries of the liquidation of the reorganized debtor's assets. According to the Plan, the Class B Limited Partner Committee ("Committee") was formed to represent the common interests of the Class B Limited Partners and consisted of three members who would initially serve three-year terms. R. at 121:17-27.

On June 29, 2006, the Liquidator filed an application for entry of final decree with the bankruptcy court. According to that application, the Liquidator had made more than $43 million in disbursements to creditors and the Class B Limited Partners. R. at 129:6-10. Moreover, the application stated that at the time, the Plan had been substantially consummated with the exception of a judgment against Henry Grausz, GFI's founder, and collection of a guaranty obligation from one Andrew Branch. R. at 129:13-17.

On May 24, 2010, the Liquidator moved to reopen the case because the Committee and the Liquidator could not agree on course of action for the judgment against Grausz. R. at 133:28-134:3 (Mot. to Reopen). The Liquidator also sought to reopen the case to retain counsel to assist in executing

his duties and to pay himself and professionals employed by him as permitted by the Plan. *Id*. R. at 134:12-14. According to the Committee, the Liquidator wanted to sell the Grausz judgment to Grausz's wife for $5,000, and the Committee objected because tens of thousands of dollars allegedly had been spent to obtain the judgment. Appellant's Opening Brief ("Comm. Br.") at 9.

On December 23, 2011, the Committee filed a motion to surcharge the Liquidator in the bankruptcy court for an investment loss of approximately $150,000 in the ING Senior Income Fund ("ING Fund"), allegedly discovered only upon reopening the case. In its motion, the Committee argued that the Liquidator violated the Uniform Prudent Investment Act, Cal. Prob. Code § 16047 ("UPIA"). The Committee argued that the investment failed to meet the standard set forth by the UPIA because the investment was allegedly a risky, long-term, illiquid investment inappropriate when the estate was on the verge of closing. R. at 269:2-9. The Committee asserted that a Committee member – Dennis Carlston – suggested to the Liquidator that Carlston could obtain a significantly higher return on funds administered by the Liquidator. R. at 266:24-267:2. The Committee contended that the Liquidator declined Carlston's offer because the riskiness of the investment and the lack of a guaranteed rate of return only to "turn[] around and invest[] approximately $400,000 in what we believe was an illiquid investment fund overseen by an offshore entity called ING" a month or two later. R. at 267:2-7. The Committee alleges that the bankruptcy case was on the verge of being closed at the time of this investment. R. at 267:10-11. Further, the Committee asserted that the Liquidator failed to secure the Committee's approval for the ING Fund. R. at 271:15–19.

In support of the Committee's motion, two Committee members – Nathan Gantcher and Dennis Carlston – submitted declarations claiming to be experts on a fiduciary's duty of care and alleging that the Liquidator's investment fell below the standard of care. R. at 294-298. According to their resumes, Gantcher holds an M.B.A. and has worked for investment companies since 1968 with the exception of a two-year period as a private investor (Dkt. No. 13, Ex. 1, at 4), and Carlston also holds an M.B.A., but has never been employed by a financial institution (Dkt. No. 13, Ex. 2, at 5). Carlston invests on his own, but does not hold any professional licenses. *Id.* He claims, "[w]ith one exception, I have been able to increase my net worth every month since the age of 12." *Id.*

In opposing the motion to surcharge, the Liquidator disputed the Committee's allegation that the

3

Reorganized Debtor's estate was on the verge of closing in March of 2006 when the Liquidator invested the estate's cash in the ING Fund. R. at 316:6-8. According to the Liquidator, the estate was not in a condition to be closed until 2009. R. at 316:6-9. The Liquidator also argued that the investment met the UPIA's standard based on the facts and circumstances at the time of the investment. R. at 300:20–301:6. The Liquidator described his decision to invest in the ING Fund as a product of his personal research into the fund and consultation with Judy Mak, his licensed investment advisor at Wells Fargo Bank. R. at 318:9–319:28. The Liquidator allegedly investigated the fund's record, the nature of its portfolio, its liquidity, and the risks in the investment. R. at 318:14–17. In the Liquidator's view, the investment loss was caused by the 2008–2009 financial crash, which led to "a severe drop in liquidity" and a drop in the price of the ING Fund's shares. R. at 320:6-7. The Liquidator contended that the impending closure of the estate in 2009 prevented him from being able to sell the ING Fund shares at a more opportune time. R. at 320:7-11.

On January 27, 2012, the bankruptcy court held a hearing on the motion to surcharge the Liquidator. At the hearing, the court held:

> With respect to the surcharge, . . . I simply don't have competent evidence that there's been a breach of the duty of care. . . . we have a declaration by the liquidator that he relied on a qualified investment advisor. That's admissible evidence. We have conclusory declarations that he, in doing what he did, violated the standard of care. And there's been no showing that these witnesses are experts competent to testify as to what the duty of care is in that particular circumstance, and that this breached it.
>
> Furthermore, this issue has been around, in time to get such evidence. . . . There was time to get a declaration from a qualified expert. It's not there. Our motion practice requires that a motion be supported by competent evidence. This isn't.

R. at 807:15-808:5. The bankruptcy court subsequently entered an order denying the motion to surcharge the Liquidator on July 23, 2012. The bankruptcy court also entered orders approving the applications for compensation and expense reimbursement for the Liquidator and the Liquidator's lawyers on July 23, 2012.

On August 6, 2012, the Committee made a motion for the bankruptcy court to reconsider the order denying the Committee's motion to surcharge the Liquidator and the related orders approving the application for Liquidator's and Liquidator's attorneys' compensation and expense reimbursement. In its motion for reconsideration, the Committee argued – for the first time – that the investment in the ING

4

Fund constituted negligence per se because Bankruptcy Code § 345 requires that a bankruptcy trustee invest in a bonded and insured account. R. at 759:22-760:3. Although § 345 explicitly governs only the bankruptcy estate's funds administered by a trustee, the Committee argued that § 345 covers the Liquidator because of the functional similarities between the duties of a bankruptcy trustee and the duties imposed upon the Liquidator in this case. R. at 760:22-25. Further, the Committee argued that the Liquidator's and related attorneys' fees should be disallowed.

In a hearing on September 14, 2012, the bankruptcy court found that § 345 does not apply to the Liquidator. The court reasoned that "Section 345 is mandatory for trustees appointed in a case under Title 11. The liquidator was a trustee selected by the creditors through a Plan, and the Plan vacates the appointment of any – the confirmation of the Plan vacates the appointment of a trustee in a case under Title 11, at least normally." R. 820:24-821:4. The court denied the motion for reconsideration and entered its order on September 25, 2012.

The Committee now appeals the orders denying the motion to surcharge the Liquidator, orders approving compensation and expense reimbursement for the Liquidator and his attorneys, and the order denying the motion for reconsideration.[1]

**STANDARD OF REVIEW**

This Court reviews the bankruptcy court's findings of fact for clear error. Fed. R. Bankr. P. 8013; *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir. 1986). "Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *Latman v. Burdette*, 366 F.3d

---

[1] Appellees contend that appellant has failed to appeal the operative "Order Approving Actions of the Liquidator," in which the bankruptcy court explicitly approved the Liquidator's ING Fund investment. *See* Notice of Appeal, R. at 783-785. Because appellant did not list that particular Order in the Notice of Appeal in this case, appellees contend that appellants have waived their right to appeal that Order. Thus, that Order would stand even if this Court were to reverse the bankruptcy court on each order actually included in the Notice of Appeal. Because the Court affirms the bankruptcy court's decisions with respect to those orders actually listed in the Notice of Appeal, the Court takes no position on this dispute. In connection with this dispute, appellants filed a supplemental reply brief (Dkt. 17), to which appellees filed a motion to strike (Dkt. 19). Appellants subsequently filed a motion to withdraw their supplemental reply brief (Dkt. 22) and a motion for leave to file a supplemental reply brief (Dkt. 21). Given the Court's affirmance of the bankruptcy court here, the Court hereby DENIES each of these motions as MOOT.

774, 781 (9th Cir. 2004). The Court reviews de novo the bankruptcy court's legal conclusions and mixed questions of law and fact. *In re Lee*, 179 B.R. 149, 155 (9th Cir. B.A.P. 1995).

This Court reviews the bankruptcy court's evidentiary rulings for abuse of discretion. *Latman*, 366 F.3d at 786. "To reverse on the basis of an erroneous evidentiary ruling, [the Court] must conclude both that the bankruptcy court abused its discretion and that the error was prejudicial." *Id.* (citing *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2004).

## DISCUSSION

### I. Motion to Surcharge the Liquidator.

The Committee makes three arguments in appealing the denial of its motion to surcharge and denial of its related motion for reconsideration: (1) the bankruptcy court erred in not applying the bankruptcy trustee duty of care to the Liquidator; (2) the bankruptcy court erred in finding that the Committee's two witnesses were not qualified to give expert testimony; and (3) the bankruptcy court erred in denying the surcharge motion because the Liquidator's investment was not prudent under the Uniform Prudent Investor Act, Cal. Prob. Code § 16047(a). The Court addresses each argument in turn.

#### A. Distinction Between Bankruptcy Trustee and Liquidator

In its motion for reconsideration, the Committee argued that the Liquidator should be treated as the functional equivalent of a bankruptcy trustee because the duties of the two roles are the same. These include the duties to conserve the assets of the bankruptcy estate and maximize distributions to creditors. Comm. Br. at 7. If a bankruptcy trustee is negligent in performing his or her duties, the bankruptcy court may surcharge the trustee. *See In re Accomazzo*, 226 B.R. 426, 429 (Bankr. D. Ariz. 1998). The Committee contends that 11 U.S.C. § 345's requirement that a bankruptcy trustee invest estate funds in only bonded or insured accounts should be applied to the Liquidator in light of the similarity of the his duties to those of a bankruptcy trustee. *Id.* Applying the § 345 restrictions, the Committee contends that the Liquidator was negligent in retaining and investing $600,000 in the uninsured ING fund and losing approximately $150,000. *Id.* at 1-2.

The Committee relies on *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983),

in arguing that the Liquidator here was the functional equivalent of a bankruptcy trustee because both had fiduciary duties. That reliance is misplaced. *In re Cochise* describes only the duty of care for a bankruptcy trustee. *Id.* There was no liquidator in that case, but rather a bankruptcy trustee appointed pursuant to then existing federal bankruptcy law. *Id.* at 1344, 1345. There the Ninth Circuit held that a bankruptcy trustee could be liable for intentional and negligent wrongdoings that violate bankruptcy statutory obligations. *Id.* at 1357-58. It did not, as the Committee suggests, hold that *all* who have some fiduciary relationship to debtors or creditors are subject to bankruptcy law obligations or that they may be held liable in tort for failure to fulfill those obligations .

As the liquidator argues, Section 345(a) applies only to the money of the estate for which the trustee serves. Here, the money at issue was *not* money of the estate because that estate ceased to exist once the Plan was confirmed under Bankruptcy Code § 1141(b). A bankruptcy estate usually ceases to exist after a reorganization plan is confirmed. *See* 11 U.S.C.A. § 1141(b); *see also Hillis Motors, Inc. v. Hawaii Auto. Dealers Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993) (stating that confirmation terminates the existence of the bankruptcy estate unless the plan provides for the estate to continue). Thus, when the Plan was confirmed on June 19, 1998, the bankruptcy estate ceased to exist. Accordingly, Section 345(a) could never apply to the money held by the Liquidator at the time of the ING Fund investment because it was not money of a bankruptcy estate.

More recently, courts have confirmed that a plan-appointed liquidator is legally distinguishable from a bankruptcy law appointed trustee. *See In re Elder*, 325 B.R. 292, 301-02 (N.D. Cal. 2005). In *In re Elder*, an operator of art galleries filed for bankruptcy under Chapter 11. *Id.* at 295. The Chapter 11 trustee and the creditor's committee proposed a plan of reorganization that was confirmed by the bankruptcy court over the debtor's objections. *Id.* The debtor appealed to the district court, arguing that the bankruptcy court erred in confirming a plan that did not subject the Plan Administrator to the statutory fee cap placed on bankruptcy trustees. *Id.* at 296. In deciding the question of the statutory fee cap, the court found that, "'[t]he postconfirmation trustee is a contractual, state-law trustee . . . whose powers and duties are determined by the Plan and not by Chapter 11 of the Bankruptcy Code.'" *Id.* at 301 (quoting *In re Sullivan*, 153 B.R. 751, 757 (N.D. Tex. 1993)). The court also noted that under Ninth Circuit precedent, a "'Chapter 11 bankruptcy plan is essentially a contract between the debtor and his

7

creditors, and must be interpreted according to the rules governing the interpretation of contracts.'" *Id.* at 302 (quoting *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004)). For these reasons, the court found that the Plan Administrator was not subject to the statutory fee cap despite the appellant's argument that the duties of the Plan Administrator were functionally similar to duties of a bankruptcy trustee. *Id.* at 300, 302.

Here, the Committee relies on logic that the court rejected in *In re Elder* – that bankruptcy law governs the post-confirmation liquidator because his duties are functionally similar to pre-confirmation bankruptcy trustee. Like the Plan Administrator in *In re Elder*, the Liquidator's powers and duties in this case are determined by the Plan, rather than by Chapter 11 of the Bankruptcy Code. *Id.* at 301. The Plan makes clear that after the effective date of the Plan, the reorganized debtor may conduct its business free of any restrictions of the Bankruptcy Code other than those expressly imposed by the Plan, confirmation order, and restructured loan documents. *See* Plan, R. at 87: 9-11 (the Liquidator may operate "free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by th[e] Plan...").[2] There is no mention of the Liquidator's investments conforming to § 345 of the Bankruptcy Code in the Plan. Thus, the Liquidator can only be held to the standard of care contemplated by the Plan.

Accordingly, the Court finds that the bankruptcy court's determination that § 345 did not apply to the Liquidator's investment in the ING account was not error.

### B. Competence of Expert Witnesses

Even assuming § 345 does not apply, the Committee has maintained throughout the case that the Liquidator breached the duty of care it owed the Committee pursuant to the Plan. In support of that contention, the Committee sought to introduce the testimony of Nathan Gantcher and Dennis Carlston as experts about a fiduciary's duty of care because of their investment experience. Comm. Br. 18–19. The bankruptcy court rejected the testimony of these proposed experts after finding that they were not competent to testify on that subject. Lacking this testimony, the bankruptcy court concluded that the

---

[2] This Plan provision explicitly applies to the "Reorganized Debtor," which is to be managed by the Liquidator. Thus, it applies to the Liquidator, which the parties do not dispute.

8

Committee failed to establish that the Liquidator breached his duty of care under the Plan. The Committee now appeals that finding.[3]

Under FRE 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the expert and testimony meet certain conditions. Under Rule 702, two preliminary determinations must be made by the court: (1) whether the expert testimony could assist the trier of fact in understanding the evidence or determining a fact in issue and (2) whether the alleged expert is properly qualified to give the testimony sought. *In re Flores*, 2012 WL 124973, at *5 (Bankr. N.D. Cal.) (quoting Hon. Barry Russell, Bankruptcy Evidence Manual § 702:1 (2011)).

Here, the bankruptcy court rightly concluded that the Committee failed to show that Gantcher and Carlston were experts competent to testify as to the duty of care in this particular circumstance. The declarations from Gantcher and Carlston include the conclusory claim that they are familiar with a fiduciary's duty of care and that the Liquidator's decision to invest in the ING fund fell below the standard of care. R. at 295:2-12, 297:2-12. According to their respective resumes, although Gantcher and Carlston have experience as investors, nothing in their education or work experience indicates that they are properly qualified to testify about the particular standard of care for a bankruptcy trustee, much less the standard of care for a liquidator acting according to a confirmed Chapter 11 plan. Dkts. 13-1 at 4, 13-2 at 5. The Committee has not shown that Gantcher and Carlston have served as bankruptcy trustees, post-confirmation liquidators in Chapter 11 cases, or other kinds of fiduciaries in the bankruptcy context. *Id.* Nor has the Committee shown that Gantcher and Carlston have specialized training in bankruptcy or reorganization plans. *Id.* And the Ninth Circuit has routinely upheld the disqualification of proposed experts who lack specific expertise, notwithstanding their general expertise. *See, e.g., Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1364 (9th Cir. 1976) (affirming disqualification of putative expert with 30 years of poultry market experience for failure to show present understanding of current poultry markets). Given their lack of experience as bankruptcy fiduciaries, their opinions

---

[3] The Committee has filed a motion to amend appellant's excerpts on appeal in order to add inadvertently omitted exhibits to Gantcher and Carlston declarations. Dkt. 13. That motion is GRANTED.

would have been speculative, at best.

For these reasons, the Court finds that the bankruptcy court did not err in excluding the proposed expert testimony in support of the motion to surcharge the Liquidator. Accordingly, the Court also affirms the bankruptcy's court holding that the Committee failed to establish that the Liquidator breached the duty of care required by the plan.

### C. Prudence of Liquidator's Investment

In addition to the alleged negligence under the Plan discussed above, the Committee also argues that the Liquidator should be surcharged because his investment was not prudent under the Uniform Prudent Investor Act, Cal. Prob. Code § 16047(a) ("UPIA"). The Committee contends that the Liquidator's decision to invest $600,000 in the ING Fund in 2006, instead of distributing the funds to the partners of the Committee, was a violation of the Liquidator's duty to treat creditors fairly and exercise a measure of care that an ordinarily prudent person under similar circumstances would exercise. Comm. Br. at 13. The Committee also argues that the Liquidator failed to satisfy his fiduciary obligations to the Committee because the Liquidator allegedly did not evaluate the risk and the rate of return for this investment. *Id.* at 16.

The Liquidator responds that his investment was prudent because he consulted with an investment advisor at Wells Fargo Bank – Judy Mak – and conducted his own investigation into the Fund's record, its investments, and its risk. Appellee's Responding Brief at 18:20-25. The Liquidator contends that the Fund lost substantial value because of the turmoil in financial markets beginning in 2008. *Id.* at 19:3-4. The Liquidator also argues that he complied with the UPIA. *Id.* at 18:15-18.

As discussed above, the Liquidator's powers and duties are governed by the Plan. According to the Plan, the Liquidator serves as a fiduciary to the reorganized debtor and the holders of allowed claims and allowed interests, and "may dispose of assets, compromise controversies, and otherwise administer the Reorganized Debtor in a manner reasonably determined by the Liquidator in good faith to be in the best interests of the Reorganized Debtor and its creditors and equity holders" subject to certain conditions. R. at 98:20-99:7.

The parties do not dispute that the plan permits the Liquidator to be held liable under the UPIA.

10

Pursuant to the UPIA, a trustee is required to invest trust assets as a prudent investor would and use reasonable care and skill. Cal. Prob. Code § 16047(a). The trustee's decisions are to be evaluated in "the context of the trust portfolio as a whole." *Id.* § 16047(b). The Act identifies circumstances appropriate for the trustee to consider, such as general economic conditions, appreciation of capital, needs for liquidity, and regularity of income. *Id.* § 16047(c). Under the Act, the trustee also must make a reasonable effort to ascertain facts relevant to the investment of trust assets. *Id.* § 16047(d). In evaluating compliance with the Prudent Investor Act, the trustee's actions are to be evaluated in light of the facts and circumstances at the time rather than by hindsight. *Id.* § 16051.

Here, there is an abundance of evidence from which the bankruptcy court could have concluded that the investment was prudent. The Liquidator's consultation with the investment advisor Judy Mak, his own significant research into the fund, the Fund's history of a 5% return, the unforeseen nature of the financial meltdown in 2008, and his withdrawal of the investment in 2009 out of fear of further decline in value, all support the Liquidator's argument that he reasonably decided upon the ING investment in good faith to maximize the return for the Committee. These facts also suffice to show that the Liquidator's investment met the standard set forth in the UPIA, which requires an investment to be evaluated as of the time it was made, not in hindsight. Although the investment suffered a significant loss, the financial crisis of 2008 and subsequent loss of liquidity in the market were not sufficiently foreseeable to make the 2006 investment a breach of the duty of care. The Liquidator also explained the reasons the estate of the reorganized debtor was not in a condition to close until 2009. Thus, his decision not to distribute $600,000 to the Committee in 2006 – when the estate was still accruing administration fees and other expenses – was not an unreasonable one. Finally, the Liquidator's independent research and consultations with a licensed investment advisor at Wells Fargo indicate that the Liquidator considered both the risk and rate of return of this investment.

For these reasons, the Court finds that the bankruptcy court did not err in denying the surcharge motion.

## II.     Compensation and Expense Reimbursement.

The Committee also appeals the various bankruptcy court orders approving compensation and

expense reimbursement for the Liquidator and his attorneys. The Committee contends that these costs should be reversed if the Court determines that the bankruptcy court erred in denying the underlying surcharge motion. The Liquidator and his counsel, the Committee contends, should not be permitted to recover such costs in pursuing and defending their pursuit of allegedly unlawful investments that did not benefit the bankruptcy estate.

A bankruptcy court's award of compensation is reviewed for an abuse of discretion. *Cogliano v. Anderson*, 355 B.R. 792, 800 (9th Cir. 2006). Here, the bankruptcy court made specific findings that the costs were reasonable. R. at 807:15-808:5; 811:7-18. The Committee does not dispute the reasonableness of these costs. Instead, it argues that they should be disallowed if this Court determines that the Liquidator's actions that gave rise to the costs were unlawful. Because the Court affirms the bankruptcy court's ruling with respect to denying the motion to surcharge, the Committee's argument is moot. Lacking any other challenge to these costs, the Court affirms the bankruptcy court's compensation and expense reimbursement orders.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the bankruptcy court. This Order also resolves Docket Nos. 13, 19, 21, and 22.

**IT IS SO ORDERED.**

Dated: August 29, 2013

SUSAN ILLSTON
United States District Judge